Georgia C. WYATT, Appellant,

v.

Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, Appellee.

No. 74–1980.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1975.

Decided July 8, 1975.

George H. Thomason, Spartanburg, S. C., for appellant.

John Rogers, Washington, D. C. (Carla A. Hills, Asst. Atty. Gen., John K. Grisso, U. S. Atty., and William Kanter, Atty., U. S. Dept. of Justice, on brief), for appellee.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

WINTER, Circuit Judge:

Georgia C. Wyatt appeals from a denial of social security disability benefits. Her initial claim that she was disabled because of "bad back & feet; nervous condition; gall bladder," supplemented by a later claim that she also had diabetes and a lipoma (a tumor consisting of fatty tissue) in the back, was denied by the Secretary. The district court affirmed.

We agree with the district court that there was substantial evidence to support the finding that Mrs. Wyatt was not disabled because of her bad back and feet, gall bladder trouble, diabetes, lipoma in the back, or any other physical ailment. But we think that Mrs. Wyatt established a *prima facie* case that her nervous condition disabled her from performing her customary occupation as a spinner in a cotton mill, and the Secretary failed to prove either that she could return to work as a spinner or that she could engage in some other substantial gainful employment extant in the national economy. Accordingly, we reverse the judgment of the district court and

direct that the case be remanded to the Secretary for further proof and further findings.

## I.

Mrs. Wyatt, age fifty-five, went to work in a textile mill when she was sixteen. She had only a sixth grade education. For thirty-seven years she was a spinner until she left work on May 3, 1972, to have bone spurs on her heels surgically removed. She did not return to her job as a spinner. After her operation she attempted to work as a trimmer in a shirt factory, but she discontinued this employment after two weeks because she was unable to stand for eight hours as required by the job. On October 24, 1972, she filed a claim for disability benefits. The claim was denied. The Administrative Law Judge held that she was not entitled to disability benefits, and both the appeals council and the district court affirmed.

Mrs. Wyatt lives with her husband and four of her eight children. The children support themselves. She rests most of the time. One of her daughters is the primary housekeeper, but Mrs. Wyatt brushes the floor, cooks one meal a day, places laundry in an automatic washing machine, and drives locally and to church when she is able. She does the marketing with her husband.

Mrs. Wyatt's medical history shows that she underwent surgery for bilateral heel spurs in May, 1972, and that she was discharged from the hospital "with status improved." She had her gall bladder removed in December, 1972, and was "discharged, in good condition." Her diabetes was first diagnosed in October, 1972, and the diagnosis was confirmed in January, 1973. She takes medication for diabetes, and the record shows that this ailment is controlled. There is nothing to indicate that the diabetes limits her activities in any way. She injured her back in 1965 and she has

been treated intermittently for this injury and some arthritis ever since.

With respect to her nervousness, Mrs. Wyatt testified, "I'm not real shaky outwardly; it's just inside, feel like I'm choking, and my meat just trembles, and I get tore up over anything." Mr. Wyatt testified that when his wife was attempting to work as a shirt trimmer she would return in the evenings "all depressed and just give completely out. She's been on nerve medicine for several years, and she'd generally take a nerve pill and lay down for two or three hours in the evening when she'd come home." He described his wife as a "nervous person" and said that when somebody talks "loud or something or other like that . . . it tears her all to pieces. I mean, she's got no control of herself don't seem like, and she gets torn up over nothing. Anything tears her all to pieces. She ain't got no control over herself, don't seem like." On cross-examination, he stated, "I just don't think she's actually able to run a job—to stay on a job because her nerves like they are and her condition like it is, I just don't think that she can run a job."

The medical evidence of Mrs. Wyatt's nervousness shows that she first received medication for "pain and nerves" in 1966, and for "nerves" in 1972. The general practitioner who treated her for about five years before he moved from her community in 1971 stated:

> She is one big bundle of nerves and has really never responded well to any therapy. I do not feel that she is physically disabled, but i [sic] do feel that she is probably disabled from a standpoint of nerves. I do not feel that she will ever respond to therapy, at least not to a degree where she will be able to work.[1]

Immediately prior to the hearing before the Administrative Law Judge, Mrs. Wyatt was examined by a psychiatrist. In his evaluation he found that while she

1. One of Mrs. Wyatt's other physicians reported in 1973 that Mrs. Wyatt had been unable to "uphold a job," and assigned as reasons her "hypertension, diabetes and painful back." He

prescribed no treatment for hypertension, and Mrs. Wyatt makes no substantial claim that it is disabling. This physician reported her diabetes "controlled" by medication.

talked "in a logical and coherent manner and did not appear to have any thought disturbance," and that she also talked "with a normal stream of thought," there was a "definite depressiveness about her, and she appeared to have an abnormally high level of anxiety." He found a tendency to "obsessive worrying" and said that she "appeared honest in her account, and was not guarded or evasive." His formal diagnosis was "psychoneurotic reaction, mixed, manifested by anxiety, depression, and somatic complaints . . . ." He expressed no view as to whether she was disabled from employment as a spinner or whether there was any other substantial gainful employment that she could perform.

## II.

■ Under the test articulated in *Underwood v. Ribicoff*, 298 F.2d 850 (4 Cir. 1962); *Redden v. Celebrezze*, 361 F.2d 815 (4 Cir. 1966); and *Hicks v. Gardner*, 393 F.2d 299 (4 Cir. 1968), we think that Mrs. Wyatt has established a *prima facie* case of disability from "nervousness." Her testimony and that of her husband establish that she is disabled from this complaint. Her past medical history shows treatment for the condition. The report of the psychiatrist is consistent with the subjective evidence and the medical history.[2] The only physician who has expressed an opinion with regard to the effect of the "nervousness" on her availability for employment says that "she is probably disabled from a standpoint of nerves."

■ Under *Taylor v. Weinberger*, 512 F.2d 664 (4 Cir. 1965), and authorities cited therein, the effect of Mrs. Wyatt's establishing a *prima facie* case shifted the burden to the Secretary to establish that Mrs. Wyatt was able to return to her customary employment or had the capacity to perform a specific job which exists in the national economy. Neither has been proved. There is simply no evidence to support the Administrative Law Judge's conclusion that while Mrs. Wyatt "has some nervousness," she nevertheless "has the residual functional capacity to return to her former occupations or to one of the many light and sedentary jobs which are available in significant numbers in the economy of this region."

On the present record, we do not think that the denial of disability benefits to her can stand. At the same time, the record is not conclusive that Mrs. Wyatt is so disabled that under no circumstances could she perform any job because of her nervous condition. The deficiencies in the finding of the Administrative Law Judge stem from a lack of evidence to overcome a *prima facie* case, rather than a sufficiency of evidence to require a specific result. Therefore, we think that the Secretary should be afforded an opportunity to adduce additional proof to counter Mrs. Wyatt's *prima facie* showing and to show that Mrs. Wyatt is not so disabled that she could not return to her former occupation or to another job available in the national economy. In the further proceedings that we contemplate, Mrs. Wyatt of course should be afforded the opportunity to adduce additional evidence to rebut any which may be produced by the Secretary, or to support her *prima facie* showing.

The district court should vacate the Secretary's denial and remand the case for further proceedings in accordance with our views.

Reversed and remanded.

---

**2.** The Social Security Administration has issued regulations which attempt to explain the sorts of mental impairments which render a claimant disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1506; Subpart P, Appendix, § 12.00. The report of the psychiatrist contains findings which appear to fit the description in the regulations of a disabling mental impairment. *See* Appendix, § 12.04(b) and (c).