Robert L. LEWIS, Appellant,

v.

Caspar WEINBERGER, Secretary of the Department of Health, Education, and Welfare, Appellee.

No. 75–1757.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 1, 1975.

Decided Feb. 9, 1976.

**418**

W. Dale Green, Charleston, W. Va., for appellant.

Fred Marinucci, Asst. Regional Atty. (John A. Field, III, U.S. Atty., Charleston, W. Va., and H. Marshall Jarrett, Jr., Asst. U.S. Atty., Charleston, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Robert L. Lewis appeals from the district court's affirmance of the Secretary of H.E. W.'s denial of disability benefits under the Social Security Act. He claims to be disabled within the meaning of 42 U.S.C. §§ 416(i), 423(d), due to a severe chronic anxiety tension state and moderately severe hypochondriacal neurosis. The Secretary admits that Lewis suffers from these conditions, but contends that there is substantial evidence to support his determination that Lewis can nevertheless perform substantial gainful work, and therefore is not disabled.

We are convinced that there is a firm evidentiary base to show that Lewis is disabled due to mental impairment, and that there is not substantial evidence to refute it. We therefore reverse and direct the entry of an order requiring the Secretary to grant the claimed benefits.

I.

Lewis was born August 7, 1922, and completed only nine years of schooling, but has the equivalent of a high school education on the basis of GED testing. He has worked as a truck driver, forklift operator, and salesman. He claimed that he had been unable to work since August 8, 1971, because of chronic prostatitis and anxiety tension state.

The evidence showed that Lewis was treated by a urologist on May 18, 1970, and that prior thereto he had had chronic prostatitis for a number of years which had been partially controlled by medication. In June, 1970, he underwent a transurethral resection of the prostate. Because of persistent perineal discomfort and evidence of residual prostatic infection, he was hospitalized again in December, 1970. His physical problems responded temporarily to medical management, but when he resumed his normal activities and attempted to work, they recurred. Beginning in May, 1971, he began to be treated for an anxiety tension state in addition to treatment for chronic prostatitis.

In November, 1971, Lewis was again hospitalized and underwent a radical prostatovesiculectomy which was performed in an effort to resolve his perineal discomfort and prostatic infection. While the operation was apparently successful in controlling the infection—but not in relieving persistent lower abdominal pain—he continued to have a problem with chronic anxiety tension state. Dr. Kiser, his treating physician, expressed the view in April, 1972, that Lewis was totally and permanently disabled and that it was unlikely he would return to gainful employment. Dr. Kiser thought that this condition had existed since August 7, 1971.

In a letter dated June 12, 1972, Dr. Kiser outlined that Lewis's major problem, chronic anxiety, was only partially controlled by constant therapy with tranquilizing medication. He noted that Lewis complained of continued pain in the perineal region which was aggravated by physical activity. Dr. Kiser thought it unlikely that Lewis would be able to perform heavy manual labor, but suggested that occupation in other jobs might be considered if Lewis could cope with his emotional problems. Dr. Kiser subsequently expressed the view, in his letter dated November 2, 1972, that Lewis was totally and permanently disabled and was unable to resume any substantial gainful occupation at that time or in the foreseeable future.

Dr. Rodgers, a psychologist, made a psychological evaluation of Lewis in September, 1972. His evaluation led him to suspect "marked conversion reaction overlay and significant hypochondriasis, probably with compensation neurosis aspects, to whatever physiopathology may be present, in a generally rather repressive, mildly to moderately depressed and anxious man." Dr. Rodgers urged Lewis to undertake more activity—a return to work or an involvement in any kind of consistent part-time activity, but Dr. Rodgers noted that Lewis was "resistant," and added, "I [Dr. Rodgers] doubt that I have much effective to offer."

Lewis was also examined by Dr. Kitching, a psychiatrist selected by the Secretary, on January 5, 1973. Dr. Kitching diagnosed Lewis as suffering from "hypochondriacal neurosis, chronic and moderately severe, manifested by preoccupation with the body and presumed diseases of various organs and withdrawal from ordinary activities of life." By reason of impotence and physical ills, Dr. Kitching stated that Lewis had "concomitantly regressed and withdrew from life and responsibility in a moderately severe hypochondriacal neurotic adjustment . . . ." He stated flatly, "I do not think he can or will do sustained gainful work. He might in psychotherapy see and make a healthier adjustment, but there would have to be strong motivating forces which I do not see at present . . . even to enter therapy."

The Administrative Law Judge, whose findings were accepted by the Secretary and sustained by the district court, concluded that Lewis was not disabled within the meaning of the Act. He called attention to the fact that at the hearing Lewis did not exhibit any physical handicaps and did not appear to be in pain or suffering any difficulties. While he recognized that psychological testing showed "marked conversation reaction overlay and significant hypochondriasis," and that Dr. Kitching diagnosed "moderately severe hypochondriacal neurosis," he stressed that Dr. Kitching considered the illness "mild for industrial adaptability." Overall, the Administrative Law Judge thought that the evidence established some physical impairment together with a severe chronic anxiety tension state and moderately severe hypochondriacal neurosis, but that it failed to indicate that degree of severity which would incapacitate Lewis for all forms of substantial gainful activity.

## II.

As we view the case, it is one in which, if "disability" is to be found, disability stems from mental illness. Lewis has, of course, not completely solved his physical problems stemming from his history of prostatitis, but even he does not contend that this

**420**

condition alone would justify an award of a disability benefit to him. We therefore direct our principal attention to Lewis's mental or psychological difficulties.

■ It is clear that the Social Security Act covers psychological disabilities. Both 42 U.S.C. § 416(i)(1)(A) and 42 U.S.C. § 423(d)(1)(A) define "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or *mental* impairment . . . ." (Emphasis added.) In addition, 42 U.S.C. § 423(d)(3) states:

> For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or *psychological* abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. (Emphasis added.)

■ In upholding the Secretary, the district court relied on the appendix to the Secretary's regulations, 20 C.F.R. Subpart P, App. 12.04, which describes certain disabling mental conditions. The district court was of the view that it was necessary that Lewis's condition fall within one of the listed categories in order for him to recover. This was error.

> [T]he regulation is a handy guide to lay examiners to advise them when disability . . . has unquestionably resulted, but the regulation cannot be construed to establish the exclusive means by which the showing may be made.

*Martin v. Secretary of H.E.W.*, 492 F.2d 905, 910 (4 Cir. 1974).

Rather, the appropriate test is whether the claimant's "mental impairment or impairments are of such severity that he . . . cannot . . . engage in any . . . substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). We think that the record supports only the conclusion that this test was met.

### III.

In *Wyatt v. Weinberger*, 519 F.2d 1285 (4 Cir. 1975), we held that a claimant had made out a prima facie case of disability due to mental impairment when she showed (1) that her own doctor considered her "disabled from a standpoint of nerves," (2) that her past medical history and the subjective testimony of herself and her husband were consistent with her physician's conclusion, and (3) that the diagnosis of a psychiatrist she consulted was also consistent with a finding of psychological disability. This showing was deemed sufficient to require the Secretary to go forward and produce substantial evidence that the claimant had sufficient residual capacity that she could perform a job in the national economy.

Here, the record shows in regard to Lewis (1) that his treating physician, Dr. Kiser, considered him totally disabled when his emotional problem was taken into account, (2) that Lewis's subjective testimony was consistent with this conclusion, (3) that a psychiatrist, Dr. Kitching, who examined him, expressed the view that he could not do sustained gainful work, and (4) that a psychologist confirmed the existence of "marked conversion reaction overlay and significant hypochondriasis, probably with compensation neurosis aspects . . . ." The case for Lewis is even stronger than the case for the claimant in *Wyatt*. The record thus requires the conclusion that Lewis is disabled and entitled to benefits unless there is substantial evidence to show he is not so severely disabled that he cannot perform some job.

### IV.

The Administrative Law Judge found that Lewis could perform the jobs of "salesman, light truck driver, light delivery man and similar sedentary to light work . . . ." The limitation to "sedentary to light work" was necessary because of the persistence of physical symptoms which, despite Lewis's prostate surgery, prevented him from performing heavy manual labor. Since there was no direct evidence that Lewis was capable of performing any of the specific enumerated jobs, the Administrative Law Judge's conclusion must have been based on a finding that Lewis's mental im-

pairment was not sufficiently severe as to be totally disabling. We turn to what is asserted to be record support for such a finding.

The Secretary relies principally upon three passages from the reports of the two physicians and the psychologist. Dr. Kiser, the treating physician, after discussing Lewis's emotional difficulties, stated that "occupation in [light] jobs might be considered if he can adequately cope with the emotional problem." This statement is conditional and begs the question. Moreover, it comes in the context of other statements by Dr. Kiser that, considering the emotional problem, Lewis was disabled.

Next, the Secretary points to the statement of Dr. Rodgers, the clinical psychologist who examined Lewis, that he "suspect[ed] patient would be much better off in some kind of work situation . . . ." However, Dr. Rodgers immediately added that he was "not quite sure how to accomplish" a return to work, and noted that "these problems are difficult to resolve . . . ." Thus, taken in context, the statement by Dr. Rodgers relied on by the Secretary is no evidence that Lewis *can* work, but only tends to show that he might be aided by appropriate therapeutic procedures if they were available.

Finally, the Secretary argues that the diagnosis of Dr. Kitching, the Secretary's examining psychiatrist, that Lewis's impairment was "mild for industrial adaptability and severe for social and personal adaptability" is evidence that Lewis can do substantial gainful work. We cannot accept this argument, for Dr. Kitching goes on flatly to conclude that "I do not think he [Lewis] can or will do sustained gainful work."

■ The Secretary also attempts to rely on the Administrative Law Judge's observation that Lewis did not appear to be in pain while testifying. In cases of alleged psychological disability, such lay observation is entitled to little or no weight and, standing alone, cannot be substantial evidence to support the Secretary's decision.

## VI.

■ We conclude therefore that on the record before us, the overwhelming evidence shows that Lewis is totally disabled and there is not substantial evidence to support a contrary conclusion. On remand, the district court should enter an order directing the Secretary to grant the claimed benefits.

REVERSED AND REMANDED.

ALBERT V. BRYAN, Senior Circuit Judge (dissenting):

The District Court has found that the record, when considered as a whole, supports the finding of the Secretary. Likewise, I cannot say that the administrative decision is without substantial evidence to sustain it. I would affirm. *Whiten v. Finch*, 437 F.2d 73 (4 Cir. 1971).