John E. HARRIS, Plaintiff,

v.

F. David MATHEWS, Secretary, Department of Health, Education and Welfare, Defendant.

Civ. No. H–76–258.

United States District Court,
D. Maryland.

April 19, 1977.

Dennis M. Sweeney, Legal Aid Bureau, Baltimore, Md., for plaintiff.

Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., for defendant.

ALEXANDER HARVEY, II, District Judge:

Plaintiff, John E. Harris, brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of the Department of Health, Education and Welfare denying his claim for disability insurance benefits. After the defendant had filed an answer, together with a certified copy of the administrative record, plaintiff filed a motion to remand this case for further proceedings.

In support of his motion to remand, plaintiff contends that the Administrative Law Judge (hereinafter "the ALJ") failed to evaluate the report of plaintiff's treating physician, improperly restricted cross-examination of the vocational expert and failed to adequately evaluate plaintiff's subjective complaints. Plaintiff also contends that the findings of the ALJ concerning plaintiff's mental condition are not supported by substantial evidence. The Secretary has opposed the plaintiff's motion for a remand and has filed a motion for summary judgment. Briefs have been submitted in support of the pending motions, and argument has been heard from counsel in open court.

Plaintiff filed an application for a period of disability and for disability insurance benefits on November 7, 1973, alleging that he became unable to work on December 9, 1967, at age 40. The application was denied initially and again after reconsideration by the Bureau of Disability Insurance of the Social Security Administration. After a hearing on October 30, 1975, at which plaintiff was represented by a law student, Administrative Law Judge George W. Blaine in a written decision found that "the claimant's motivation is his primary problem" and that claimant was not disabled within the terms of the Act. The Appeals Council affirmed the ALJ's decision after receiving into evidence an additional clinical abstract from Dr. Albornoz-Ruiz of North Charles General Hospital. The plaintiff thereafter timely commenced this action, seeking judicial review of the Secretary's action.

Plaintiff is presently 49 years old. He left school in the sixth grade and has worked on a farm, in a sawmill, in road construction, as a truck driver and as a gas station attendant. His last employment was as a "burner" and pipefitter's helper from 1959 through December 1967. At the administrative hearing, plaintiff stated that he quit work in December 1967 for the following reasons:

> Because I could not work. I could not eat, I could not sleep, I could not get up to work so I stopped. Before I stopped, I lost a lot of time from work. My left side would go "dead" and I lost all use and strength. Five minutes after I eat, I either vomit it up or pass it like water.

Plaintiff and his wife, prior to November 1973, lived on the third floor of a rowhouse on East 23rd Street. Plaintiff testified that during the time he lived there, "he could not do nothing" and some days could not get up for two or three days. However, plaintiff admitted that on other days he would walk three or four blocks to North Avenue, would help his wife shop, and would drive an automobile.

In addition to the transcript of the administrative hearing, the record here contains numerous medical reports dating from 1968. These medical reports are significant in this case because plaintiff has been seen at several different hospitals and has received many negative evaluations of his subjective complaints. Two reports from Baltimore City Hospital categorize his complaints as "totally unreliable" and "bizarre and inconsistent", and several other medical reports comment on his lack of motivation, concluding that plaintiff "simply does not want to work."

After an evaluation of all the evidence, the ALJ in his five-page Decision dated November 7, 1975, said the following:

> The administrative law judge finds that as of December 31, 1972, and prior thereto, that the claimant possessed the physical and mental capabilities to perform in the jobs recommended by the Vocational Expert. The claimant's motivation is his primary problem and not his subjective

complaints of "miseries". The pain he expresses has not been significantly discommoding, nor has he received intensive therapy for it, nor during the years subsequent to the date on which he last met the special earnings requirements is there probative evidence that the pain was significantly restrictive for a substantial period of time.

### FINDINGS

After careful consideration of the entire record, the administrative law judge makes the following findings:

1. The claimant last met the special earnings requirements of the Act on December 31, 1972.
2. The medically acceptable clinical and laboratory diagnostic techniques, and the evidence as a whole, have failed to establish an impairment or combination of impairments of sufficient severity to preclude the claimant from engaging in substantial gainful activity for the requisite 12 month period on or before December 31, 1972.
3. The claimant's residual functional capacity was sufficient to permit him to return to any of his former occupations as of December 31, 1972.
4. The claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time on or before December 31, 1972.

The medical records in this case include reports beginning in 1968 and continuing until 1974. However, the medical evidence is relevant only insofar as it relates back to plaintiff's condition on or before December 31, 1972, the date upon which plaintiff last met the special earnings requirements of the Act.

On January 15, 1968, plaintiff was seen at Baltimore City Hospital with complaints of "cramps and numbness in left arm and leg." This was approximately one month after he quit his last employment on December 7, 1967. X-rays revealed no abnormality in plaintiff's heart, lungs and lumbar and cervical spines. After a physical examination, the impressions recorded were possible pe-

ripheral neuropathy and possible carcinoid. Plaintiff was referred to the neurology clinic of the hospital, where he was seen in March 1968 and July 1968. The report of July 17, 1968 indicated that nerve medication had decreased plaintiff's numbness. A physical examination undertaken at that time revealed that plaintiff was alert, fully oriented, with normal head, neck and back, intact coordination and good motor mass. An hysteric-like hemisensory loss on the left side to pinprick and touch was noted. It was doubted that plaintiff had peripheral neuropathy and plaintiff's subjective complaints were characterized as "totally unreliable." The final impressions recorded were conversion hysteria and probable chronic alcoholism.

Plaintiff was again examined at Baltimore City Hospital in February 1973 for what were characterized as "bizarre and inconsistent" complaints of numbness and trembling on the left side. The impression noted was anxiety with somatic symptoms.

Meanwhile, a report from Johns Hopkins Hospital dated November 13, 1972 had indicated that plaintiff complained of "miseries"—vague migratory pains, general weakness, loss of appetite and fitful sleeping. It was noted that plaintiff had been seen at numerous hospitals, with numerous negative evaluations. The impression recorded was passive dependent personality with hysterical manifestations. A long medical history included in this report noted that plaintiff had a five-year history of vague complaints and that he had no real concern as to his lack of employment. Indeed, plaintiff had expressed displeasure when a rehabilitation center had offered to find him a job.

In February 1973, plaintiff had also been seen by Dr. Robert E. Stoner, who concluded that "multiple complaints appear to be psychogenic in origin." Dr. Stoner noted that plaintiff's employability "depends on emotional response to stress."

Plaintiff was seen at Mercy Hospital by Dr. Stoner again in May and July, 1973. After the latter visit, Dr. Stoner concluded, "I still feel that pts. problems are on psychological basis." A G.I. series was performed which showed a small sliding hiatal hernia, evidence of marked pyloraspasm and possible duodenitis. There was no indication that these symptoms related back to December 31, 1972.

In July 1973, plaintiff also saw a psychiatrist, Dr. Robert E. Trattner, who concluded that plaintiff was a markedly infantile character with overwhelmingly severe passive-aggressive and hypochondriacal features. Dr. Trattner stated that "all the evidence points to the [conclusion] that he wishes to justify his inability to work" and that "he simply does not want to work."

In 1974, plaintiff was treated for a minor rash and virus at Union Memorial Hospital. The record here also contains two letters from treating physicians, Dr. Holmes and Dr. Albornoz-Ruiz. The latter, who has treated plaintiff since August 1974, concluded that "the severity of his personality disorder should be sufficient to entitle him to disability benefits." However, this letter from Dr. Albornoz-Ruiz expresses no opinion as to plaintiff's condition on December 31, 1972.

The question presented in a case of this sort is whether the findings of the Secretary are supported by substantial evidence. 42 U.S.C. § 405(g); *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir. 1968); *Thomas v. Celebrezze,* 331 F.2d 541 (4th Cir. 1964). However, this issue need not be reached if either party can show "good cause" why a case on review should be remanded to the Secretary for further administrative proceedings. 42 U.S.C. § 405(g); *Smith v. Weinberger,* Civil No. 73–897–N (D.Md. Memorandum and Order dated April 24, 1974). Good cause is established in any case where it is shown that the Secretary has applied incorrect standards of law in considering a claim, *Longo v. Weinberger,* 369 F.Supp. 250, 256 (E.D.Pa.1974), or where it is shown that there is additional evidence which bears directly and substantially on the matters in dispute and which will not prejudice the parties if offered in subsequent administrative proceedings. *Smith v. Weinberger, su-*

*pra; Martin v. Richardson*, 325 F.Supp. 686 (W.D.Va.1971).

## I

*Plaintiff's Motion to Remand*

In seeking to remand this case to the Secretary for further proceedings, the plaintiff contends (1) that the ALJ failed to evaluate the report of Dr. Holmes dated May 21, 1974; (2) that the ALJ restricted the cross-examination of the vocational expert; (3) that the ALJ's findings as to plaintiff's mental condition are not supported by substantial evidence; and (4) that the ALJ failed to adequately evaluate plaintiff's subjective complaints.

Plaintiff first contends that "good cause" for a remand to the Secretary exists because of the failure of the ALJ to evaluate explicitly the report of Dr. Holmes dated May 21, 1974. In this report, Dr. Holmes said the following:

The above captioned patient has been seen by me periodically since 1966 for symptoms of hypertension, gastritis and symptoms suggestive of peripheral Neuritis. He has also been treated for nervousness.

The blood pressure has varied for different periods—ranging from the hyper to the hypotensive states. However, he has not been able to work since 1967 due to the complaints of gastritis and pain in the extremities. A history of bullet wound in the left thigh has been related to the pain and soreness in the lower extremity.

In 1972 he was referred to Provident Hospital for a G.I. series, which was negative.

In 1973 he was seen at Mercy Hospital for evaluation of the gastritis symptoms of nausea, vomiting and abdominal pain. A gall bladder series was done with normal findings. Other studies were done and the following diagnoses were made: 1. Small sliding hiatal hernia with no reflux 2. Marked pyloraspasm 3. Edematous mucosa of duodenal bulb—duodenitis.

During the latter part of 1972, and during 1973 and 1974, he has been seen regularly with the complaints of weakness, nausea and peripheral pain and soreness.

A report from Mercy Hospital in July 1973 suggested that part of the complaint offered by the patient might be on a psychological basis, however, the symptoms have persisted and the impressions from the x-ray studies done at Mercy Hospital suggest that the symptoms are basically founded.

When last seen in April 1974, the blood pressure reading was 140/86. The symptoms of gastritis, peripheral neuritis, and nervous anxiety were still noted.

In his written Opinion, the ALJ *explicitly* refers to Dr. Holmes' report in his evaluation of the evidence, when he notes "Subsequent medical records, including an X-ray of the chest, disclose no significant ailment (Exhibits 13 and 14)." Exhibit 14 is the Dr. Holmes report of May 21, 1974. Moreover, in his discussion, the ALJ also *implicitly* discusses the Holmes report when he states:

As of the critical date, and subsequent thereto, there is no objective medical evidence to establish the existence of a significant ailment. The claimant was described as having a passive-dependent personality; there is no evidence as of that time or at any subsequent time that the claimant required or received psychiatric care; a psychiatric examiner later stated that psychotherapy would not be useful in light of the fact that the claimant had found more rewards in not working and that his wife had apparently accepted him with his way of life—the claimant testified that his wife had recently been struck on her head and that she is receiving disability benefits. * * The claimant's motivation is his primary problem and not his subjective complaints of "miseries". The pain he expresses has not been significantly discommoding, nor has he received intensive therapy for it, nor during the years subsequent to the date on which he last met the special earnings requirements is there probative

evidence that the pain was significantly restrictive for a substantial period of time.

■ While the findings of a personal physician are entitled to great weight, *Oppenheim v. Finch,* 495 F.2d 396, 398 (4th Cir. 1974), the ultimate conclusion as to disability rests with the Secretary. *Richardson v. Perales,* 402 U.S. 389, 398, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Here, Dr. Holmes' report, one of nine separate medical reports in the record, was given serious consideration by the ALJ, who then rejected the opinion expressed by this particular physician. This Court is satisfied that Dr. Holmes' report has already been fairly evaluated and that there is no basis here for a remand of the case for further consideration of this portion of the record. The ultimate decision as to disability necessarily must be made by the Secretary on the basis of the entire record.

■ Plaintiff further contends that the ALJ erred in characterizing Dr. Holmes' report as disclosing "no significant ailment", since the report mentioned nine ailments. Plaintiff's objection to the word "significant" does not establish "good cause" for remand. An unsuccessful claimant is not permitted to comb the written Opinion of the ALJ for individual words susceptible of piecemeal challenge. Rather the essential issue is whether there is substantial evidence in the record *as a whole* to support the Secretary's decision. 42 U.S.C. § 405(g); *Laws v. Celebrezze, supra.*

■ Plaintiff next contends that the ALJ denied him a full and fair hearing by restricting the scope of the cross-examination of the vocational expert undertaken on his behalf at the administrative hearing. Plaintiff's law student representative asked the expert the following:

Q. If the Claimant came to you in your capacity as a private counselor, how would you go about counseling him?

ADMINISTRATIVE LAW JUDGE: I will not permit any inquiry along that line, Counselor. I laid down the groundwork, ground rules in my opening statement. The Claimant will testify on varying assumptions posed by you and by me with respect to the Claimant's residual functional capacity.

Inquiries such as you make are not helpful to me in reaching a decision in the case, and would only lead to other areas that would fustigate the problem, in my judgment.

Cut the record a minute. (Discussion off the record)

It is well settled that the extent of cross-examination rests in the sound discretion of the ALJ. *N.L.R.B. v. Bryan Mfg. Co.,* 196 F.2d 477 (7th Cir. 1952). Although a claimant should be granted wide latitude in cross-examination, *Trice v. Weinberger,* 392 F.Supp. 1193 (N.D.Ga.1975), this Court can perceive no abuse of discretion here. Plaintiff's representative attempted to explore a collateral area of vocational counseling which was of marginal relevance to the issues of disability and residual functional capacity. This Court concludes that the testimony in question was properly excluded in the discretion of the ALJ. In any event, this Court is satisfied that such exclusion, even if unjustified, would not amount to sufficient "good cause" to justify remand.

■ The next argument presented by plaintiff is that the ALJ's findings as to plaintiff's mental condition are not supported by substantial evidence. Essentially, it is contended that the ALJ never resolved the question whether the plaintiff's lack of motivation was caused by wilful malingering or by a psychiatric disorder.

This contention is without merit. The ALJ carefully considered whether plaintiff was *mentally* impaired prior to December 31, 1972 and whether plaintiff had the residual capacity for work activity. He stated:

As of the critical date, and subsequent thereto, there is no objective medical evidence to establish the existence of a significant ailment. The claimant was described as having a passive-dependent

personality; there is no evidence as of that time or at any subsequent time that the claimant required or received psychiatric care; a psychiatric examiner later stated that psychotherapy would not be useful in light of the fact that the claimant had found more rewards in not working and that his wife had apparently accepted him with his way of life—the claimant testified that his wife had recently been struck on her head and that she is receiving disability benefits.

\*   \*   \*   \*   \*   \*

The administrative law judge finds that as of December 31, 1972, and prior thereto, that the claimant possessed the physical and *mental* capabilities to perform in the jobs recommended by the Vocational Expert. [Emphasis added]

Plaintiff's reliance on *Lewis v. Weinberger,* 541 F.2d 417 (4th Cir. 1976) is misplaced. In *Lewis,* there was medical testimony in the record that "Lewis's major problem, chronic anxiety, was only partially controlled by constant therapy with tranquilizing medicines." *Id.* at 419. Moreover, unlike *Lewis,* there is ample medical testimony in this case that the plaintiff "simply does not want to work."

The Court would note that in *Blackwood v. Mathews,* 551 F.2d 304 (4th Cir. 1977), the Secretary determined that claimant's primary impairment was "hysterical personality with conversion manifestations", the same diagnosis made by doctors at Baltimore City Hospital when they examined plaintiff on July 17, 1968. In that case, disability benefits were denied by the Secretary, and this denial was affirmed by the District Court and the Fourth Circuit.

In this case, the only medical evidence relating to plaintiff's mental condition before his insured status expired in December 1972 consists of the 1968 Baltimore City Hospital impression of "conversion hysteria" and the November 1972 Johns Hopkins Hospital impression of "passive-dependent personality with hysterical manifestations". On such a record, the Secretary could well conclude that plaintiff's mental problems were mild and not disabling.

■ After the ALJ's decision, the Appeals Council received into evidence a clinical abstract from Dr. Albornoz-Ruiz which stated that while plaintiff was not psychotic, his personality disorder was severe enough to entitle him to benefits. However, this clinical abstract noted that plaintiff was first seen by the clinic on August 28, 1974, which was some twenty months after his insured status had expired. Under such circumstances, the Secretary was justified in giving little weight to this opinion. Even with the addition of the report of Dr. Albornoz-Ruiz, there is substantial evidence in the record to support the Secretary's conclusion that plaintiff had sufficient mental capacity to work.

.Finally, plaintiff contends that the ALJ failed to *adequately* evaluate plaintiff's subjective complaints. However, this is not a case in which the ALJ completely ignored the claimant's subjective symptoms. *See Storck v. Weinberger,* 402 F.Supp. 603 (D.Md.1975). The ALJ expressly evaluated the plaintiff's subjective symptoms and found:

> The claimant's motivation is his primary problem and not his subjective complaints of "miseries". The pain he expresses has not been significantly discommoding, nor has he received intensive therapy for it, nor during the years subsequent to the date on which he last met the special earnings requirements is there probative evidence that the pain was significantly restrictive for a substantial period of time.

. ■ Unsupported claims of subjective pain are not enough to entitle a claimant to disability benefits unless credited by the ALJ. In this case, the ALJ carefully considered and rejected plaintiff's subjective complaints. As these complaints received explicit evaluation by the ALJ, no good cause for a remand of this case arises because of this final argument advanced by plaintiff in support of his motion.

## II

### Defendant's Motion for Summary Judgment

 Also before the Court is the Secretary's motion for summary judgment. The Secretary contends that the denial of plaintiff's application for disability benefits is supported by substantial evidence in the record as a whole.

As the Fourth Circuit stated in *Thomas v. Celebrezze,* 331 F.2d 541, 543 (1964):

Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance. . . The Secretary and not the courts, is charged with resolving conflicts in the evidence, and it is immaterial that the evidence before him will permit a conclusion inconsistent with his. . . . If his findings are supported by substantial evidence, the courts are bound to accept them. . . . In short, the courts are not to try the case *de novo.*" [Citations omitted]

This Court has already found herein that there is substantial evidence to support the Secretary's conclusion that plaintiff was not under a psychological disability. After a review of the record as a whole, this Court is likewise satisfied that there is substantial evidence to support the Secretary's determination that plaintiff also was not under any physical disability.

As of December 1972, there was no objective medical evidence of any significant ailment. The 1968 tests at the Baltimore City Hospital were essentially normal, plaintiff's complaints had been dismissed by the staff as "totally unreliable", and the neurology clinic doubted peripheral neuropathy. Moreover, numerous statements of doctors who examined the plaintiff support the Secretary's conclusion that plaintiff's problem is that "he simply does not want to work."

In his decision, the ALJ considered plaintiff's subjective complaints but rejected them in favor of medical evidence and medical testimony that he found more credible. This determination was properly one for the ALJ to make, and this Court is satisfied that his decision was supported by substantial evidence in the record as a whole. *Locklear v. Mathews,* 424 F.Supp. 639 (D.Md. 1976).

For all the above reasons, it is this 19th day of April, 1977, by the United States District Court for the District of Maryland,

ORDERED:

1. That the motion of plaintiff to remand to the Secretary of Health, Education and Welfare be and the same is hereby denied;

2. That the motion of the defendant for summary judgment be and the same is hereby granted; and

3. That judgment be and hereby is entered in favor of the defendant.