**Guy Chapman WILSON, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Appellee.**

**No. 79–1183.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1979.

Decided March 17, 1980.

---

Robert E. Sevila, Leesburg, Va. (Kuykendall, Whiting, Costello & Hanes, Leesburg, Va., on brief), for appellant.

Michael Leonard, Asst. Regional Atty., Philadelphia, Pa. (Stephanie W. Naidoff, Regional Atty., Philadelphia, Pa., William B. Cummings, U.S. Atty., Thomas K. Berger, Asst. U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WINTER, RUSSELL and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Claimant Guy Chapman Wilson appeals from an order of the district court affirming the denial of his claim for disability insurance benefits under 42 U.S.C. §§ 416(i) and 423(d) of the Social Security Act. The Administrative Law Judge found that claimant suffered from a psychological impairment of sufficient severity to prevent return to his former work as an insurance salesman, but retained the residual functional capacity to perform other substantial gainful activity. Accordingly, he denied the claim and the Appeals Council affirmed. We hold that this determination, made without the assistance of a vocational expert, was not supported by substantial evidence and remand for further proceedings consistent with this opinion.

Claimant was 45 years old at the time of the Secretary's decision and has a college education. He was employed by New York Life Insurance Company until March, 1976, and receives a disability pension from that company. He testified that he began having psychological difficulties as early as 1972. He claims he has lost his "desire," has difficulty relating to his wife and neighbors and generally feels that everything is stacked up against him. The record is replete with references to claimant's disagreements with others over his productivity at work, the dissolution of his family, financial difficulties, and trouble with the judicial system relating to his divorce and support proceedings.

The medical evidence amply supports the ALJ's conclusion that claimant is unable to return to his former employment. Claimant's personal physician diagnosed anxiety depression in March, 1975, and prescribed anti-depressive medication. ·Dr. Restak, a neurologist who examined claimant on several occasions beginning in October, 1975, because of pain in the nuchal region, concluded that claimant had "some cervical degenerative disease and severe anxiety depression."

Claimant's efforts to deal with his emotional difficulties through professional help

were largely unavailing. After ending his employment with New York Life Insurance Company, claimant met on a weekly basis with Dr. Edward Houghton, a psychiatrist. Dr. Houghton noted claimant's loss of motivation and goal orientation, resulting from the dissolution of his family, and concluded that he was suffering from depressive neurosis of severe degree. Dr. Houghton treated claimant with medication and psychotherapy.

Beginning in 1976, claimant underwent both group and individual therapy at Northern Virginia Family Service. In the individual sessions, claimant resisted therapy. He "appeared to be locked into both presenting his pain in a way that was manipulative (tears and references to suicide) and denying its existence altogether." The therapist saw "major impediments to his making use of therapy." At the group sessions, claimant showed more anger than depression.

In November, 1976, claimant had his initial session with Dr. Michael Arons, staff psychiatrist at the Northwest Center for Community Mental Health. Dr. Arons described claimant's problems with productivity and conflicts with other employees at work which he took out on his wife at home. The resulting dissolution of claimant's family, Dr. Arons noted, led in turn to extreme depression, anger at his wife and continued anger at work. Claimant's psychiatric problems were complicated by arm pain and headaches, apparently due to the degenerative cervical spine disease.

Dr. Arons wrote, "[i]n terms of psychiatric disability, I see the depression and amount of anger in this man as being too severe to allow him to function adequately as an insurance salesman." He described claimant as lacking in confidence and too frightened to perform because he has "everything on the line."

In December, 1976, claimant was evaluated by Dr. Adrian Duffy on referral by the Virginia Department of Vocational Rehabilitation. Dr. Duffy noted that claimant was well dressed and groomed, and well oriented. Sensorium was clear and he was alert and aware of his environment. The underlying mood was one of moderate depression. Dr. Duffy noted claimant's anger at his wife and the court system. He remarked, "I had the distinct impression that his anger was something he was attempting to control, but was having difficulty in so doing. I believe it might very well intrude upon his thoughts and thus interfere with his ability to concentrate." Claimant's thinking was logical and goal-directed, but Dr. Duffy noted claimant's "marked suspiciousness" of his neighbors and lawyers.

Dr. Duffy concluded that claimant probably could not perform his old job for some time, but noted he was apparently responding to treatment, and "as he improves and as his marital situation becomes resolved, he could certainly return to his old job or work in some other capacity for the insurance company."

In March, 1977, Dr. Arons, following up his original diagnosis, expressed disappointment that the results of treatment had not been what he had hoped. He noted claimant "cannot engage in an interpersonal relationship with stress and authority issues without rage and contempt spilling over into it," and concluded that plaintiff could not work effectively as a salesman or at other work where relationships with other people were necessary.

Finally, in a December, 1977, report submitted to the Appeals Council, Dr. Arons stated:

Although [treatment with psychotherapy and chemotherapy] have been of some help, he continues to harbor a tremendous amount of anger at his wife and events surrounding his divorce and the ensuing legal and financial problems. Because of the perpetual state of pressure under which Mr. Wilson now lives, he fluctuates between rather severe, withdrawn depressive periods and angry, almost violent episodes. It has been and continues to be my professional judgment that under these conditions Mr. Wilson is psychiatrically disabled and unable to work.

■ The virtually unanimous medical evidence of claimant's inability to return to his customary employment, coupled with his own testimony, shifted to the Secretary the burden of going forward with substantial evidence to establish that claimant had sufficient residual capacity to engage in a specific job which exists in the national economy. *Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975). *See also, Wyatt v. Weinberger,* 519 F.2d 1285 (4th Cir. 1975). The Secretary purports to have met this burden in the following statement by the Administrative Law Judge.

> "[i]t appears from the record that such impairment does not prohibit him from engaging in all types of gainful activity but does prevent him from returning to his former employment as insurance salesman or to those jobs which require constant and intense interpersonal relationships. In light of claimant's college education and his past work experience and age, the undersigned is of the opinion that claimant has the skills needed to be a night desk man in a motel or hotel and also has the skills to do light maintenance work. Such jobs would not inflict undue stress. These jobs are present in significant numbers in Virginia and in the Washington, D. C., metropolitan area."

It is apparent that the ALJ misconceived his role as well as his burden in rebutting the claimant's *prima facie* case. We think an independent vocational expert was necessary to provide specific evidence of claimant's capacity to perform substantial gainful work which exists in the national economy.

1. We therefore reject the suggestion that Dr. Duffy's report provides an adequate basis for the Secretary's decision. Moreover, Dr. Duffy recommended that claimant return to his old job or work in some other capacity for the insurance company "as he improves and his marital situation becomes resolved." Dr. Arons' subsequent reports show that the presumed improvement upon which Dr. Duffy's conclusion is based did not in fact occur. *See Lewis v. Weinberger,* 541 F.2d 417 (4th Cir. 1976).

■ Reviewing courts have consistently demanded specific factual support for the conclusion that a disability claimant has alternate vocational capacity.

It is incumbent on the Secretary at a minimum, to come forward with specific findings showing that claimant has the physical and mental capacity to perform specified jobs, taking into consideration the requirements of the job as well as the claimant's age, education, and background.

*Hall v. Secretary of HEW,* 602 F.2d 1372, 1377 (9th Cir. 1979). *See also Taylor v. Weinberger; Wyatt v. Weinberger, supra; Smith v. Califano,* 592 F.2d 1235 (4th Cir. 1979); *O'Banner v. Secretary of HEW,* 587 F.2d 321 (6th Cir. 1978); *Hernandez v. Weinberger,* 493 F.2d 1120 (1st Cir. 1974); *Garrett v. Richardson,* 471 F.2d 598 (8th Cir. 1972); *Meneses v. Secretary of HEW,* 143 U.S.App.D.C. 81, 442 F.2d 803 (D.C.Cir. 1971); *Orzel v. Finch,* 445 F.2d 150 (6th Cir. 1971).

In *Taylor v. Weinberger, supra,* we expressly rejected the contention that the Secretary may establish specific vocational ability solely through medical evidence [1] or by "administrative notice." Implicit in *Taylor* is the recognition that the ALJ is not qualified to provide affirmative vocational evidence. Such evidence, rather, should be provided by persons who have, through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs.[2]

2. 1. Section 1–87–12 of the Handbook of the Bureau of Hearings and Appeals issued in May, 1967, provides:

QUALIFICATIONS OF VOCATIONAL EXPERTS

A vocational expert is selected under criteria approved by eminent specialists in the field of vocational placement. Generally, they are counseling psychologists with extensive experience in vocational placement.

The following criteria have been considered in their selection:

(1) Knowledge and experience in:

An ALJ who has heard a multitude of disability claims and vocational experts, and therefore feels knowledgeable in vocational matters, must resist the temptation to dispense with vocational expert testimony in favor of his own experience. Aside from the ALJ's lack. of formal qualification and actual contact with the working community, it is manifestly unfair for the ALJ to rely on assumptions and "facts" which the claimant cannot, without reading the ALJ's mind, test or rebut.

The Secretary argues that our decision in *McLamore v. Weinberger*, 538 F.2d 572 (4th Cir. 1976), supports the ALJ's resolution of this case without the aid of a vocational expert. *McLamore* represents a narrow exception to the general rule that a vocational expert is required in order to support a finding of alternate employability.[3] *Smith v. Califano*, 592 F.2d 1235 (4th Cir. 1979). It is an exception which relieves the Secretary of the need for elaborate proof of the obvious, and we decline to apply it in this case.

The ALJ found claimant cannot perform work which requires constant and intense interpersonal relationships, and properly ruled out jobs involving either intense dealing with the public or undue stress. The psychiatric testimony of Dr. Arons, as well as claimant's testimony, shows claimant's inability to deal with authority issues. In his final report, Dr. Arons noted that continuing pressures have affected claimant's physical health. Claimant also takes anti-depressants and testified that he feels suicidal without them. Finally, there is evidence of cervical degenerative disease which might affect his working capacity.

Clearly, the complex character of these impairments removes this case from the "common knowledge of ordinary men." *McLamore, supra*, 538 F.2d at 575.

We conclude that the ALJ lacked sufficient evidence to overcome claimant's *prima facie* case of disability. We express no view as to claimant's ultimate entitlement to benefits, but remand to allow the Secretary

---

(a) vocational counseling and placement, particularly, of the handicapped;

(b) the use of occupational materials developed for use in vocational counseling such as systemized occupational information, including occupational classifications, job descriptions, definitions and job families;

(c) the use and interpretation of psychological tests relating to occupation placement and adjustment;

(2) Ability to observe and evaluate personal characteristics, educational and vocational background, interests, physical and mental characteristics, and to interpret them in terms of their occupational significance;

(3) Well-rounded, up-to-date knowledge of, and experience with, industrial and occupational trends, labor market conditions and work settings; and

(4) Knowledge of the concept of transferability of skills in terms of related job family groupings.

That section was revised in July, 1978, as follows:

1–87–12 QUALIFICATIONS OF VOCATIONAL EXPERTS

After consultation with key officials of the American Personnel and Guidance Association and the American Psychological Association in June, 1962, and subsequent judicial experience, the criteria enumerated below have been established by BHA for qualifying as a VE in the social security disability hearings program.

A. Current and extensive experience in:

1. Counseling *or* in job placement of handicapped people.

2. The use of occupational materials developed for vocational counseling, including information about the requirements of jobs such as duties, skills, physical demands, working conditions, and significant occupational characteristics (i. e., a working knowledge of the Dictionary of Occupational Titles, Third Edition, 1965, and its two supplements); and

3. The utilization of the concept of transferability of skills in terms of worker traits and functions.

B. Ability to evaluate age, education and prior work experience in light of residual functional capacities.

C. Well-rounded, up-to-date knowledge of, and experience with, industrial and occupational trends and local labor market conditions.

*See also Davis v. Mathews*, 450 F.Supp. 308 (E.D.Cal.1978).

---

**3.** In *McLamore*, the Secretary, without resort to vocational expert testimony, found that a twenty-six year old high school graduate suffering from a relatively minor back injury could perform certain light and sedentary jobs specifically listed and described in South Carolina's *Job Guide*.

to adduce appropriate proof to counter claimant's *prima facie* case. The claimant may also submit additional materials to rebut the Secretary's evidence or to supplement his own.

The judgment of the district court is vacated and remanded with instructions to remand to the Secretary for proceedings consistent with this opinion.

*VACATED AND REMANDED.*