Charles D. SIMONS

v.

Margaret M. HECKLER, Secretary of Health and Human Services.

Civ. A. No. 83–1458.

United States District Court, E.D. Pennsylvania.

July 22, 1983.

Richard L. Colden, Jr., Drexel Hill, Pa., for plaintiff.

Edward T. Ellis, Asst. U.S. Atty., Edward S.G. Dennis, Jr., U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This action was brought under 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health and Human Services ("Secretary") to terminate plaintiff's disability benefits under Title II of the Social Security Act, as amended. The plaintiff, Charles D. Simons ("Simons"), was originally found to have been disabled as of April 17, 1970 due to a psychotic depressive reaction which matched a disability listed in Appendix 1 to 20 C.F.R. § 404.1520(d). On March 16, 1982 the Disability Determination Division of the Social Security Administration notified Simons, after a review of his file, that his disability no longer precluded him from engaging in substantial gainful activity and that his disability benefits were being terminated. This determination was affirmed on reconsideration by the Social Security Administration. Simons, represented by counsel, presented his claim *de novo* before an Administrative Law Judge ("ALJ") who found that Simons' impairments no longer matched an impairment listed in Appendix 1 and that his impairments did not prevent him from engaging in substantial gainful activity of a sedentary nature as of March 1982. This determination became the final determination of the Secretary when the Appeals Council denied review of the ALJ's decision on March 8, 1983.

This matter is before us on cross-motions of the parties for summary judgment. For the reasons which follow we grant plaintiff's motion for summary judgment and reverse the decision of the Secretary.

## FACTS AND MEDICAL EVIDENCE

Simons began experiencing difficulties in November 1967 when he suffered an apparent heart attack which was later diagnosed as an anxiety attack. (Tr. 139) Simons returned to his work as a certified public accountant in March 1968 and began receiving outpatient psychotherapy from Dr. Wren. In January 1970 Simons had a severe intensification of his symptoms: weakness in the legs, chest pains, muscle spasm-

ing. (Tr. 168) In April 1970 he stopped working as a result of his condition. He has not returned to work since then and he was awarded disability benefits, based on a diagnosis of psychotic depressive reaction, as of April 1970. Simons was a patient for three weeks at the Philadelphia Psychiatric Center in June 1970 for treatment of what was diagnosed as depressive neurosis. (Tr. 137) Currently Simons lives at home. At home he performs most of the housework. He and his wife socialized exclusively with another couple until recently when the couple moved away. (Tr. 53) Simons still complains of a physical reaction to anxiety caused by being away from his home. (Tr. 39) He also has taken to drinking heavily and has trouble dealing with his family.

Dr. Secunda, Simons' treating psychiatrist since 1973, has diagnosed him as having a borderline personality disorder with a poor prognosis. (Tr. 181) Dr. Secunda's therapy at this time is "primarily supportive" with only periodic visits (4 to 6 per year) and minimal medication. It was his medical opinion that there is little chance of Simons ever returning to the job market in any capacity. (Tr. 181)

Simons was also examined, on May 2, 1982, by Leonard M. Paul, Ed.D., a psychologist and vocational expert, who reported that it was unlikely that Simons could engage in substantial gainful employment. (Tr. 170) Dr. Paul diagnosed Simons as having agoraphobia with panic attacks, psychological factors affecting his physical condition, and alcohol dependence. Dr. Secunda attributed such factors to Simons' borderline personality disorder. Both doctors reported that Simons' physical symptoms of weakness in the legs, chest pains and muscle spasming were a product of his psychological disorders.

Dr. Goppelt, a psychiatrist, interviewed Simons at the request of the Social Security Agency on March 8, 1982 and found him to be "alert, polite, oriented and superficially cooperative" but also "insincere." (Tr. 153) Dr. Goppelt disagreed with the diagnosis of borderline personality disorder and instead reported that Simons' problems stemmed from chronic alcoholism. Dr. Goppelt did not report whether he felt that Simons' condition had originally been alcoholism or whether alcoholism had replaced a previous psychological disorder. Even with the diagnosis of chronic alcoholism, Dr. Goppelt stated that Simons' prognosis was poor. (Tr. 154) Dr. Goppelt made no evaluation of Simons' ability to work although he did report that Alcoholics Anonymous might be a better treatment than Simons' current psychotherapy. (Tr. 154)

A vocational expert, Mr. Robert Wolf, testified at the administrative hearing as to the availability and suitability of employment after being advised of Simons' previous skills and certain hypothetical medical conditions. Mr. Wolf did not base his opinions on his own observations of Simons, but rather on the hypothetical situations posed by the ALJ. Mr. Wolf testified that if Simons suffered from the disabilities he alleged, then he would be unable to perform his previous work or transfer his prior skills to any other work. However, Mr. Wolf was able to list a number of occupations which Simons could engage in assuming, as he was asked to, that Simons "can get along with other people, relates with other people, that he is alert, he has a good memory, exercises good judgment." (Tr. 79–80) These occupations included credit analyst, small business loan analyst, general bookkeeping work, property manager, personel [sic] interviewer and office manager.

## ALJ FINDINGS

The ALJ found that Simons' previous work as a certified public accountant required "substantial contact with co-workers and exceptional mental capabilities, particularly the ability to deal effectively with stress, mental pressure and frustration." (Tr. 15) He further found that Simons has a borderline personality disorder which, because of the nature of the disorder, prevents him from engaging in his previous work. However, Simons was found to be able to transfer his skills to the other sedentary jobs to which Mr. Wolf had testified. By accepting Mr. Wolf's testimony that Si-

mons was able to engage in other specific jobs in the national economy, it appears that the ALJ relied upon the hypothetical situation which he posited in his presentation of Simons' case to Mr. Wolf. As noted earlier, that hypothetical situation required Mr. Wolf to assume that Simons could get along with other people and relate to them. This is contrary to the ALJ's basis for finding that Simons could not return to his previous work.

### SCOPE OF JUDICIAL REVIEW

The process to be used by the ALJ in evaluating disability claims has been set out by the United States Court of Appeals for the Third Circuit as follows:

> There is a two-pronged test for social security act disability: (1) determination of the extent of disability; and (2) determination whether that impairment results in inability to engage in substantial gainful activity. A claimant satisfies her initial burden of proof by showing that she is unable to return to her customary occupation. *E.g., Stark v. Weinberger,* 497 F.2d 1092 (7th Cir.1974); *Baker v. Gardner,* 362 F.2d 864 (3d Cir.1966). Once she has made such a demonstration, the burden of proof shifts to the Secretary to show that the claimant, given her age, education, and work experience, has the capacity to perform specific jobs that exist in the national economy. *E.g., Lewis v. Weinberger,* 541 F.2d 417 (4th Cir. 1976); *Hernandez v. Weinberger,* 493 F.2d 1120 (1st Cir.1974).

*Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir. 1979).

Simons satisfied his initial burden of proof by presenting the reports of Drs. Secunda and Paul stating that he was unable to return to work as a certified public accountant. The ALJ, in his findings, stated that Simons could not return to his previous employment and there was no evidence to the contrary. The burden was thus on the Secretary to show that Simons had the capability to do specific jobs which exist in the national economy.

The ALJ found that the Secretary had satisfied this burden and therefore found Simons not to be disabled. Under 42 U.S.C. § 405(g) we are bound by any factual finding which is supported by "substantial evidence." "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979). In evaluating whether the ALJ's findings are supported by substantial evidence, we must determine whether or not the ALJ has taken all the evidence into account. This requires more than setting out the evidence upon which he relies; the ALJ must also explain his rejection of evidence that conflicts with his findings of fact. *Cotter v. Harris,* 642 F.2d 700 (3d Cir.1981).

In the case *sub judice* the ALJ failed to adequately consider the probative evidence of both Simons' treating psychiatrist, Dr. Secunda, and Dr. Paul. While the ALJ set out all the evidence regarding Simons' condition in his "Evaluation of the Evidence," he did not explain why he rejected the medical opinion of Drs. Secunda and Paul that Simons was unable to do any substantial gainful work. The ALJ found that Simons had a borderline personality disorder which prevented him from engaging in his previous work but which failed to prevent him from engaging in some other form of work. The ALJ points to no medical evidence in the record to support this conclusion.

The other relevant evidence, while not always in agreement with that of Drs. Secunda and Paul, fails to support the ALJ's findings of fact. Dr. Goppelt disagreed with the diagnosis of Dr. Secunda but still felt that Simons was a chronic alcoholic with a poor prognosis. The ALJ did not rely on Dr. Goppelt's diagnosis of chronic alcoholism in his finding that Simons could not return to his previous work. Further, Dr. Goppelt expressed no opinion as to Simons' ability to do work. Mr. Wolf's testimony as to available work was based on a hypothetical situation rather than Simons' condition. Thus it would seem that the

ALJ relied primarily on his own observations of Simons at the hearing to support his finding of an ability to do work. In so doing the ALJ noted that "[h]e (Simons) interacted well, and his questions displayed adequate memory, the ability to concentrate, relevance and coherence, and the absence of significant limitations in overall intellectual fuctioning (sic)." (Tr. 14) The ALJ's lay observations, however, do not constitute substantial evidence in the face of contrary medical evidence. *Lewis v. Califano*, 616 F.2d 73 (3d Cir.1980). This applies to lay observations about mental as well as physical conditions. *Kelly v. Railroad Retirement Bd.*, 625 F.2d 486 (3d Cir. 1980); *Lewis v. Weinberger*, 541 F.2d 417 (4th Cir.1976).

The ALJ also appears to have based his conclusions as to Simons' ability to work on Simons' apparent unwillingness to engage in more active treatment for his illness. He stated that "[t]he record shows that claimant's problems are responsive to treatment, but that he has not actively sought it, and could not satisfactorily explain such refusal." (Tr. 14) A refusal of prescribed treatment can form the basis of a denial of disability benefits. 20 C.F.R. § 404.1530 (1982); *Cooper v. Richardson*, 333 F.Supp. 249 (S.D.W.Va.1971). In the case *sub judice*, there is no evidence that Simons has refused any treatment from his treating psychiatrist, Dr. Secunda. The ALJ is apparently referring to Simons' failure to attend an agoraphobia clinic recommended by Dr. Paul during his one-time examination of Simons. Simons testified that he did not want to go because "I'm scared to death to do it" and "the thought just terrifies me." (Tr. 47) While these excuses may seem irrational, they are consistent with the symptomatology of borderline personality disorder. Further, there is little evidence as to the expected effectiveness of treatment since Dr. Paul made no recommendation about treatment in his report. *See, Stephens v. Ribicoff*, 307 F.2d 304 (4th Cir. 1962). Dr. Goppelt's recommendation that Simons attend Alcoholics Anonymous was similarly based on one interview with Simons and there was no indication that the therapy would improve Simons' ability to work. Also, given the ALJ's acceptance of Simons' agoraphobia, it is questionable whether this treatment would be consistent with that finding.

Thus the ALJ's findings are not supported by substantial evidence both because of the ALJ's use of the available evidence and his apparent use of impermissible considerations. There is no medical evidence to contradict the reports of Drs. Secunda and Paul that state that Simons cannot perform any substantial gainful activity. While Dr. Goppelt, in his report, may disagree with the diagnosis of the other two doctors, he does not provide evidence which supports the ALJ's finding that Simons can perform other work. The testimony of Mr. Wolf also fails to provide support of substantial evidence since it was based on hypothetical conditions which must themselves be supported by substantial evidence before they are of any value. We also note that the ALJ found that Simons could not perform his previous work because it involved substantial dealings with co-workers and ability to deal with stress and frustration. Yet, the ALJ found that Simons was capable of working as a personnel interviewer or office manager in his finding that Simons could transfer his skills to other jobs in the national economy. This case involves more than just a failure by the ALJ to explain why he chose one piece of evidence over another. Rather, it involves the ALJ making a finding of fact which contradicts some evidence without being supported by other evidence.

Since the ALJ's finding that Simons can work, as adopted by the Secretary when she refused to review the ALJ's decision, is not supported by substantial evidence, and since there is substantial evidence that Simons is disabled, we reverse the Secretary and remand this case to the Secretary to determine benefits.