**Billy R. WARD, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.**

**No. CIV–77–634–D.**

United States District Court, W. D. Oklahoma.

Jan. 19, 1981.

Michael J. Harkey, Oklahoma City, Okl., for plaintiff.

John E. Green, Acting U. S. Atty. by David A. Poarch, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final administrative decision of the defendant Secretary, that plaintiff's previously determined disability ceased in February 1977 and that his entitlement to disability insurance benefits under the Social Security Act ended two months thereafter. References to the transcript of the record of the proceedings upon which the Secretary's determination was based, initially and upon remand, as more particularly described below, will be made parenthetically by the notation "Tr." followed by the appropriate page number or numbers. The record in-

cludes an original transcript consisting of 290 pages and a supplemental transcript consecutively numbered from pages 291 through 355.

Plaintiff originally filed an application for disability insurance benefits on January 18, 1971 (Tr. 69–72), alleging a disability consisting of "back & left leg injury due to fall" on September 8, 1970. The application was denied initially (Tr. 77–78), upon reconsideration (Tr. 82–83) and, by a hearing examiner after a hearing at which plaintiff and his wife appeared and testified (Tr. 158–174). Upon review of that decision, the Appeals Council concluded that the decision was correct and it became the final decision of the Secretary with respect to that application. The record does not indicate that judicial review was sought of that decision.

Thereafter, on August 23, 1973, plaintiff again applied for disability insurance benefits alleging a disability from an impairment described as "back condition" which had an onset of September 16, 1970. This application was denied initially (Tr. 181–182), and there is no indication in the record of any further proceedings on this application.

On June 6, 1974, plaintiff filed a further application for disability insurance benefits which ultimately resulted in this action. This application alleged a disability resulting from impairments described as follows: "Back and left leg—One back surgery 7/27/73 and another expected." The onset of the impairment was stated to be September 7, 1970. This application was denied initially (Tr. 187–188). Upon reconsideration, on October 3, 1975, plaintiff was awarded benefits from April 17, 1973 (Tr. 192). Plaintiff nevertheless requested a hearing before an Administrative Law Judge, stating that he disagreed with the onset date and felt that he was disabled from September 1970, not April 1973 (Tr. 25). A hearing was thereafter held on October 29, 1976 before an Administrative Law Judge, who thereafter determined, on February 2, 1977 (Tr. 8–16) that plaintiff was properly awarded disability insurance benefits beginning April 17, 1973 and that

his disability ended on the date of the decision, with plaintiff being entitled to an additional two months disability insurance benefits, as provided in the Social Security Act. Plaintiff thereafter requested review of that decision by the Appeals Council (Tr. 7). Upon such review, the Appeals Council, after admitting in evidence an additional medical report (Tr. 6), determined that the decision of the Administrative Law Judge was correct (Tr. 5). That decision therefore became the final administrative decision of the defendant Secretary. Plaintiff thereafter filed this action for review of that decision.

This court thereafter granted plaintiff's Motion to Remand which was based upon a medical report in which plaintiff is diagnosed as having chronic obstructive lung disease. This court noted that there was no previous medical evidence in the record of a severe lung condition and that therefore the medical report raised new matter which bears upon the matter in dispute. The action was therefore remanded to the defendant Secretary. The Appeals Council remanded the case to an Administrative Law Judge, who considered the medical report which was the subject of the Motion to Remand and several other medical reports as well. The Administrative Law Judge thereafter made his Recommended Decision (Tr. 304–313) to the effect that plaintiff was entitled to a period of disability commencing April 17, 1973, and to disability insurance benefits, and that such disability ceased on February 2, 1977, thereby terminating plaintiff's entitlement to benefits at the close of April 1977. Plaintiff requested review of that decision by the Appeals Council (Tr. 302). Upon such review, the Appeals Council entered findings and conclusions and a final decision identical to that of the Administrative Law Judge.

Plaintiff objected to this decision and filed his brief in support of reversal and continuation of disability insurance benefits, to which the defendant Secretary replied. The matter was thereafter submitted to the court for decision.

A person claiming entitlement to Social Security disability insurance benefits has the burden of establishing that he was disabled on or before the date on which he last met the statutory earnings requirement. *McMillin v. Gardner*, 384 F.2d 596 (10th Cir. 1967); *Stevens v. Mathews*, 418 F.Supp. 881 (W.D.Okl.1976); *Dicks v. Weinberger*, 390 F.Supp. 600 (N.D.Okl.1974); *See Johnson v. Finch*, 437 F.2d 1321 (10th Cir. 1971). For the purposes of plaintiff's claims, "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).

The scope of the court's review authority is narrowly limited by 42 U.S.C. § 405(g). The Secretary's decision must be affirmed if supported by substantial evidence. *Gardner v. Bishop*, 362 F.2d 917 (10th Cir. 1966); *Stevens v. Mathews, supra*. Substantial evidence is more than a scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Stevens v. Mathews, supra*. However, substantial evidence is less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Stevens v. Mathews, supra*.

In conducting this judicial review, it is the duty of this court to examine the facts contained in the record, to evaluate conflicts and to make a determination therefrom as to whether the facts support the several elements which make up the ultimate administrative decision. *Heber Valley Milk Co. v. Butz*, 503 F.2d 96 (10th Cir. 1974); *Nickol v. United States*, 501 F.2d 1389 (10th Cir. 1974); *Stevens v. Mathews, supra*. In this case, the ultimate administrative decision is evidenced by the findings of the Administrative Law Judge, which findings were adopted along with the Administrative Law Judge's conclusion, by the Appeals Council, and by the findings of the Appeals Council itself upon review. Those findings (Tr. 312, 295), are as follows:

[Findings of the Administrative Law Judge]

"1. The claimant was disabled within the meaning of the Social Security Act beginning April 17, 1973.

"2. The claimant's impairments were: Back condition and recuperation from remedial surgery.

"3. The medical evidence shows that as of February 2, 1977, the claimant's impairments had improved.

"4. Beginning February 2, 1977, the claimant had the functional capacity to perform his former work of truck driver or painter as well as other jobs such as security guard, taxicab driver and truck or taxicab dispatcher, which jobs exist in significant numbers in the national economy and in the region where claimant lives.

"5. Considering the claimant's age, education, work experience and improved functional capacity, the claimant had the ability to engage in substantial gainful activity beginning February 2, 1977.

"6. The claimant's disability ceased in February 1977.

"7. Entitlement to a period of disability and to disability insurance benefits ended with the close of April 1977."

[Findings by the Appeals Council]

"1. The claimant meets the special earnings requirements of the Act through the date of this decision.

"2. The claimant has the following impairment: status post laminectomy.

"3. The claimant's impairment does not prevent him from performing work not requiring heavy lifting, repeated bending or stooping, etc.

"4. The claimant is unable to perform his past relevant work as a steeplejack. This work was unskilled.

"5. The claimant has had the residual ,,functional capacity for light work as defined in section 404.1510(c) of Subpart P, Regulations No. 4, at least since February 2, 1977.

"6. The claimant is 41 years old, which is defined as a younger individual.

"7. The claimant has an eighth grade education.

"8. Regulation 404.1513 and Rule 202.17 Table No. 2 of Appendix, Subpart P, Regulations No. 4 direct that the claimant, considering his maximum sustained work capability, age, education, and work experience, be found 'not disabled' at least since February 2, 1977.

"9. The claimant's non-exertional limitations do not significantly affect his maximum sustained work capability for light work and, therefore, considering the claimant's residual functional capacity within the framework of the above rule, the claimant is found 'not disabled.'

"10. The claimant's 'disability' which began April 17, 1973, ceased on February 2, 1977.

"11. The claimant was not under a 'disability' as defined in the Social Security Act, as amended, at any time prior to April 17, 1973, or after February 2, 1977, through the date of this decision."

■ The elements of proof which should be considered in determining whether plaintiff's previously determined disability within the meaning of the Social Security Act had ceased, as found by the Administrative Law Judge and the Appeals Council are: (1) objective medical facts; (2) medical opinions; (3) subjective evidence of pain and disability; and (4) the claimant's age, education and work experience. *Hicks v. Gardner,* 393 F.2d 299 (4th Cir. 1968); *Stevens v. Mathews, supra; Morgan v. Gardner,* 254 F.Supp. 977 (N.D.Okl.1966). The

evidence in the record before the court will be summarized below.

## MEDICAL EVIDENCE

Although there is some mention in the record of an injury in 1964, plaintiff's hospitalization at that time appears to have been for a duodenal ulcer (Tr. 98). His applications for disability insurance benefits, however, are clearly the result of an injury which occurred in September 1970. Plaintiff was working as a steeplejack and was pulled off of a platform when a co-worker dropped a sandblasting hose. The resulting fall injured his back and left leg. Plaintiff was hospitalized on several occasions shortly after the injury and was reportedly involved in litigation with regard to the injury, which complicated diagnosis and treatment. During this period, a lumbar myelogram was done, which was negative for any defects. The ultimate diagnoses were of a chronic lumbosacral strain and a gastric ulcer. In an April 1972 hospitalization for chest pain and dyspnea it was determined that most of plaintiff's problem at that time was hyperventilation. Beta streptococcal pharyngitis and neurocirculatory asthenia were diagnosed, but plaintiff left the hospital against medical advice when he was not provided pain medication which he thought he needed (Tr. 139). The hospital and medical records for this entire period, comprising the exhibits before the Administrative Law Judge in connection with plaintiff's first application for disability insurance benefits are to be found at Tr. 69–156. They are exhaustively set out and reviewed by the Administrative Law Judge in his decision (Tr. 158–174), that plaintiff was not entitled to such benefits.

In a June 30, 1972 report (Tr. 222–223), Dr. Robert S. Davis diagnosed a ruptured disc and depressive reaction, and indicated a work tolerance for light or sedentary work due to back pain on walking or lifting. In a report dated October 6, 1972 (Tr. 224–225), Dr. Jim H. Earls, a psychiatrist, noted that plaintiff had been hospitalized in Eastern State Hospital earlier in 1972 because of a disturbance of the peace charge and that he

had also been seen by a psychiatrist in Fort Smith, Arkansas. Dr. Earls tested plaintiff and determined that he would have some trouble controlling his anger and impulses and that he had an I.Q. of 88, placing him toward the lower end of normal. His conclusion was that plaintiff suffered from an impulse character disorder but was relatively free of any serious psychiatric illness and was not emotionally disabled.

Dr. John Florence, an orthopedic surgeon, in a report dated November 2, 1972 (Tr. 226) noted that plaintiff had a good range of motion of the spine when he was tricked, but refused to flex his spine or move to the right or left until he was tricked. No sensory or reflex changes or unilateral atrophy of either thigh or calf was found. The impression was of no pathology and that plaintiff could walk, stand, bend, sit, squat, lift or "do any other task that he so desires at this time."

The report of Dr. Stephen Tkach, an orthopedic surgeon, together with clinic notes covering the period May 23 through September 17, 1973, and the medical records from plaintiff's hospitalization of July 16 through July 31, 1973 (Tr. 227–238), indicate that plaintiff reported reinjuring his back picking up cross ties on April 17, 1973. A myelogram on July 17 showed a small defect at L–5, S–1. On July 27, Dr. Tkach performed a decompression laminectomy and indicated that the nerve roots were somewhat edematous and that discs were within normal limits. Plaintiff made an uneventful recovery with a slight delay in ambulation until a corset was obtained for back support. He was discharged on July 31, 1973. The hospital's progress notes for July 29 and 30 (Tr. 238) indicate, *inter alia*, that plaintiff apparently had a low threshold for pain and that objective evidence of pain was not impressive.

On December 7, 1973 (Tr. 239) Dr. W. E. Knight, an orthopedic surgeon, reported that plaintiff's straight leg raising was positive at sixty degrees on the right and at forty-five degrees on the left, that he reported some numbness over the distribution of the first sacral nerve root on the left but

says this has been improving slightly since surgery. In February 1974 (Tr. 240–241), Dr. W. G. Lockhart indicated the need for a repeat myelogram, that the same was subsequently done and was found to be negative, and that he would not reoperate plaintiff, but that plaintiff should return to the operating surgeon in Oklahoma City.

On July 3, 1974, Dr. Peter J. Irwin, an orthopedic surgeon, reported his treatment of plaintiff, and enclosed records of the Sparks Regional Medical Center, Fort Smith, Arkansas (Tr. 243–250). His conclusion was that no orthopedic treatment was possible and that plaintiff should be evaluated neurosurgically by his operating physician in Oklahoma City. The gastroenterology department of the Holt-Krock Clinic in Fort Smith, Arkansas, had also evaluated plaintiff and diagnosed duodenitis.

On August 13, 1974, Dr. Frank Tull, an orthopedic surgeon, reported (Tr. 251–252) that plaintiff's straight leg raising was positive bilaterally at sixty degrees, producing some pain in the left lower back. The left calf and thigh measured slightly less than the right but Dr. Tull was unable to detect any sensory deficit. X-rays of the lumbar spine revealed no gross abnormality. He diagnosed degenerative vertebral disc disease, lumbar, and chronic anxiety and stated that there was objective evidence to substantiate the subjective complaints of low back and left hip pain. There was some neurological deficit in the left leg and plaintiff appeared to be a candidate for a repeat myelogram and probable spinal fusion. Dr. Tull also noted some emotional overlay and was unable to say whether plaintiff would be able to return to manual labor.

On July 28, 1975, Dr. Irwin noted that plaintiff had been seen only once and had not returned for follow-up and that therefore no firm opinion had been formed (Tr. 253).

On August 22, 1975, Dr. James H. Buie, an orthopedic surgeon, reported an examination of plaintiff upon referral for a workman's compensation injury on February 11, 1975 (Tr. 254–256). Dr. Buie concludes that

plaintiff "is unable to work as best as I can determine," and suggests a repeat myelogram in a standing position to determine if there is spinal stenosis present.

Reports and correspondence from Eastern State Hospital (Tr. 265–273) indicate that plaintiff was committed for examination there by the District Court of Pittsburg County, Oklahoma on a criminal charge of disturbing the peace. Testing indicated an I.Q. rating of 97–105 and otherwise unremarkable results. No major emotional disability was found.

The records of Grady Memorial Hospital (Tr. 274–282) indicate that plaintiff was hospitalized in October 1975 complaining of chest pain. Although no conclusive evidence of myocardial infarction was found during his hospitalization, the final diagnosis was of probable coronary artery disease, chronic back pain, post surgery and severe chronic depression and anxiety. It was noted that plaintiff would be referred to University Hospital for further work-up, possible exercise electrocardiogram and/or coronary arteriogram in order to find the presence or absence of coronary artery disease. The attending physician, Dr. Rossler Henton also indicated a probable duodenal ulcer. A transfer to University Hospital for the indicated coronary artery tests was arranged, but before it could be effected, plaintiff signed himself out of the hospital against specific medical advice and did not return.

A report of the Talley Walker Hospital (Tr. 283–286) indicated that plaintiff was hospitalized between February 16 and 17, 1976 and was discharged with a diagnostic impression of angina pectoris; history of peptic ulcer disease; old back injury with apparent disability; and chronic anxiety neurosis.

The report dated February 21, 1977 of Dr. Dan L. Stehr, an internist (Tr. 290), was admitted by the Appeals Council and noted a history of burning chest pain, cough, some shortness of breath, tachycardia and spirometer results indicating moderately severe obstructive changes compatible with chronic obstructive lung disease. Chest x-ray showed slightly prominent hilar markings, otherwise negative. Plaintiff was advised to stop smoking and given prescriptions for nervous tension, breathing problems and tachycardia. The report dated August 24, 1977 of Dr. S. J. Polk, a specialist in internal and occupational medicine (Tr. 324–327) detailed plaintiff's history as related to him. His physical examination of plaintiff was unremarkable and it was indicated that plaintiff was able to bend forward with outstretched hands so that the fingertips were about fifteen inches from the floor. There was about a five degree range of motion on hyperextension and on lateral flexion, there was no demonstrable motion. Straight leg raising was to ninety degrees on the right and forty degrees on the left. The length of the lower extremities were bilaterally equal and the circumference of the left calf was found to be one-half inch less than that of the right. Reflexes in the lower extremities were bilaterally equal and ankle reflexes depressed. Chest x-rays showed heart size, shape and position within normal limits, hilar markings and bronchial markings were heavy bilaterally and there was a slight peribronchial infiltration throughout both lungs. An electrocardiogram was within normal limits, spinal x-rays indicated a loss of normal lumbar curvature and narrowing of the intervertebral space between L–5 and S–1. Spirogram tests showed a forced vital capacity of seventy-four percent of normal and forced one second expiratory volume of seventy-five percent of normal. Dr. Polk's conclusions were that plaintiff suffered from: (i) chronic obstructive lung disease based upon history and findings of low pulmonary function and pulmonary fibrosis; (ii) degenerative disc pathology, lower spine with sciatic nerve root pressure on the left and atrophy of the left leg; and (iii) neurotic depressive reaction and a person of low normal intelligence. Dr. Polk then concluded that plaintiff was totally and permanently disabled from gainful employment. He added that plaintiff may suffer from two additional conditions which he is unable to confirm, those being myocardial infarction and

duodenal ulcer. Dr. Polk notes that the electrocardiogram taken in his office appeared normal and that he did not perform a gastrointestinal series on plaintiff.

The report of May 16, 1978 of Dr. J. Dan Metcalf, a general practitioner (Tr. 328–329), indicated plaintiff's history as related to Dr. Metcalf by him. The physical examination revealed limited flexion movements of the lumbar spine, tenderness and rigidity in the lumbar region, straight leg raising positive at thirty degrees left and forty degrees right, moderate tenderness in the epigastric region with no evidence of organomegaly. Examination of the chest revealed moderate decrease in expansion with lungs clear to auscultation and percussion. Pulmonary function studies revealed vital capacity and one second timed vital capacity of seventy-one percent and sixty-three percent of the expected values. Examination of the heart revealed an irregular rhythm with no murmurs or gross cardiomegaly. Dr. Metcalf concluded that plaintiff had suffered recurrent myocardial infarction in the past as well as a herniated disc resulting in chronic pain, limited mobility and permanent neurological impairment. He also concluded that plaintiff suffered from chronic obstructive pulmonary disease and peptic ulcer disease and that he therefore suffered permanent total disability from the performance of any type of gainful employment.

In a six line report dated April 25, 1978 (Tr. 330), Dr. M. Thomas Buxton, Jr. reported that he examined plaintiff and reviewed his previous examinations, not included in the record, and concluded that plaintiff was one-hundred percent permanently disabled to do any type of productive activity because of his back injury, his personality disturbances, his lack of education and the unconfirmed history of myocardial infarction. He further states "I do not see how anyone could employ him."

In a report dated June 9, 1978, Dr. W. Turner Bynum, a specialist in gastroenterology and internal medicine (Tr. 336–340), detailed his examination of plaintiff on June 8, 1978. He first reports plaintiff's history as related to him by plaintiff. The results of his physical examination of plaintiff indicated head, eyes, ears, nose and throat to be normal, the heart and lungs negative to auscultation and percussion, the abdomen revealed no guarding, tenderness, masses or megaly. The genitalia, rectum and prostate were normal and the back and extremities showed straight leg raising, figure 4 activity, pedal pulses, deep tendon reflexes, gait and station to be normal. Plaintiff's ability to sit, stand, stoop, bend, lift, grasp or bear weight were normal. Chest x-rays were essentially normal with a few discrete well healed, hylar, calcified granulomata. Electrocardiogram with Masters exercises showed normal sinus rhythm with heart rate of seventy-five on the resting tracing. Complexes were well within normal limits and not adversely affected by Masters activity, seventeen trips in one minute forty-seven seconds with no angina or undue dyspnea. The diagnosis was of a normal electrocardiogram and stress response.

With regard to pulmonary function studies, Dr. Bynum noted: "With poor cooperation and such normal findings, I feel certain these studies are reflective of normal ventilatory capacity and are consistent with clinical and x-ray findings." Laboratory studies were all within normal limits. Dr. Bynum's diagnosis was (i) culturally limited and emotionally disadvantaged; (ii) border line diastolic hypertension; and (iii) drug dependency. His prognosis was that: "There is insufficient, objective evidence of disabling, organic disease to substantiate the subjective symptoms or to warrant denial of access to a labor market activity."

Dr. Bynum includes with his report copies of the tests and other data supporting it (Tr. 340–351).

## SUBJECTIVE EVIDENCE

At the October 29, 1976 hearing before the Administrative Law Judge, plaintiff and his wife testified, plaintiff testifying at length (Tr. 35–58, 62–65), with regard to his medical history and the medication being taken by him at that time. He indicated

that he had had three heart attacks, the first in 1975. He also indicated that his left leg occasionally got numb, that he had quite a bit of pain in his back, particularly when he walked, and that he occasionally had sharp pains in his chest. The medical evidence described above also includes plaintiff's recitation to the various physicians of subjective evidence of his impairments.

## VOCATIONAL EVIDENCE

Plaintiff's work history has been primarily that of steeplejack involved in painting and sandblasting. It appears that he has worked very little, if at all, since his September 1970 injury. Plaintiff is approximately six feet tall and weighs between 190 and 200 pounds, has an eighth grade education and is married. Plaintiff and his wife have had ten children, eight of whom were living in the home at the time of the 1976 hearing. Plaintiff served in both the Navy and the Army for short periods during the mid 1950's.

## CONCLUSION

The burden of proof on the disability issue is upon the claimant to establish that he was disabled from performing his usual work, which in this case was steeplejack, painter and sandblaster. If the claimant is successful in establishing such disability, the burden shifts to the Secretary to come forward with proof of the reasonable availability to the claimant of other work for which he is physically and mentally suited. *Keating v. Secretary*, 468 F.2d 788 (10th Cir. 1972); *Kirby v. Gardner*, 369 F.2d 302 (10th Cir. 1966); *Gardner v. Brian*, 369 F.2d 443 (10th Cir. 1966). Although the Administrative Law Judge in his findings on remand (Tr. 312) determines that plaintiff after February 2, 1977 had the functional capacity to perform in his former work as a painter, as well as other jobs, the Appeals Council in its findings (Tr. 295) specifically determines that plaintiff is unable to perform his past relevant work as a

steeplejack. Thus, the burden was shifted to the defendant Secretary.

In meeting the shifted burden, regulations which became effective February 26, 1979 were applied. These regulations were promulgated to consolidate and to make uniform and consistent long-standing medical and vocational evaluation policies for adjudicating disability claims. *Hicks v. Califano*, 600 F.2d 1048 (4th Cir. 1979). These regulations take administrative notice of the existence of the numbers of jobs which exist throughout the national economy for individuals at various functional levels. *See* 20 CFR, Part 404, Subpart P, Appendix 2, § 200.00(b) (1979).

Subsection (a) of § 200.00, *supra*, provides, in material part, as follows:

"The following rules reflect the major functional and vocational patterns which are encountered in cases ... where an individual with a severe medically determinable physical or mental impairment(s) is not engaged in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work. They also reflect the analysis of the various vocational factors (i. e., age, education, and work experience) in combination with the individual's residual functional capacity (used to determine his or her maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work. Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled ...."

It is made clear in § 200.00(a) that each of the findings of fact employed in establishing the requisite "profile" for a claimant is subject to rebuttal and that the claimant may present evidence to refute such find-

ings. It is also made clear that where any one of the findings does not coincide with the corresponding criterion of a rule, the rule does not then apply and no conclusion with regard to disability is directed. In that circumstance, full consideration must be given to all of the relevant facts of the case in accordance with the definitions and discussions of each factor contained in 20 CFR §§ 404.1505—404.1511. In circumstances where the new rules are applicable, the Secretary is no longer required to present the testimony of vocational experts or other evidence bearing upon the availability of jobs for which the individual claimant would be suited.

As the Administrative Law Judge and the Appeals Council both noted, the physicians whose reports are included in the record express varying opinions as to whether plaintiff was physically able to return to work and as to the degree of any such work of which he would be capable. Their opinions also vary considerably with regard to the nature and extent of his impairments. While the opinions of professionals are entitled to great weight, the ultimate conclusion as to disability rests with the Secretary and must be made on the basis of the entire record. *Harris v. Mathews*, 430 F.Supp. 1335 (D.Md.1977); 20 CFR 404.1526. Resolution of conflicts in the evidence is for the Secretary, not for this court upon review of the Secretary's final administrative decision. *Richardson v. Perales, supra.*

In this case, the Appeals Council made findings of fact which established a "profile" for plaintiff. These findings coincided with the corresponding criteria of Rule 202.-17, Table No. 2, Appendix 2, Subpart P, which directs that the claimant be found "not disabled" since February 2, 1977. As the recitation of the history of this case makes clear, plaintiff's impairments and the question of whether and to what extent the same have resulted in his disability, as that term is employed in the Social Security Act, have been exhaustively treated over an extensive period of time. A substantial quan-

tity of medical evidence has been received, both objective and subjective in nature, in the form of reports, opinions and live testimony. Plaintiff has been expertly represented by counsel in the most recent administrative proceedings. Current medical reports were obtained and submitted. The earlier decision and the more recent recommended decision of the Administrative Law Judge contain an exhaustive recitation and analysis of the evidence, the applicable law and regulations and the bases upon which the decisions were reached. Similarly, upon review, the Appeals Council thoroughly reviewed the evidence and the recommended decision, adopted the findings and conclusions in the recommended decision and made additional specific findings in support of its decision.

The Administrative Law Judge and the Appeals Council, both initially and upon remand, upon reaching their decisions, fully considered plaintiff's medical history, present physical and mental condition, age, education and vocational background, as well as the subjective evidence of pain and disability and the objective medical findings and medical opinions. The court has reviewed the entire record herein and finds and concludes that the findings of the Administrative Law Judge and of the Appeals Council are supported by substantial evidence, that the Secretary's final administrative decision is likewise supported by substantial evidence and that the same should be affirmed. Accordingly, a judgment of affirmance will be entered this date.